**FILED**

**JAN 0 8 2003**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

LARRY W. PROPES, CLERK
COLUMBIA, S.C.

|  |  |
|---|---|
| IN RE: SAFETY-KLEEN ) <br> BONDHOLDERS LITIGATION ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 3:00-1145-17 <br><br> ORDER NO. ___ <br> **GRANTING PLAINTIFFS' MOTION** <br> **FOR CLASS CERTIFICATION** |

The matter before the court is the plaintiffs' motion for class certification. The proposed class consists of "all persons and entities who purchased or acquired 9 1/4% senior notes due in 2009 (the '2009 Bonds') issued by Safety-Kleen Corp. ('Safety-Kleen'), or 9 1/4% senior notes due in 2008 (the '2008 Bonds') issued by Safety-Kleen's predecessor, Laidlaw Environmental Services, Inc. ('LES') (collectively, the 'Company'), in initial offerings or in the secondary market from April 17, 1998 through March 9, 2000 (the 'Class Period')." The parties fully briefed the issues and, after considering the briefs and hearing oral argument, the court grants the motion certifying the class, but reserves the right to decertify or modify the class in the future.

### FACTS AND PROCEDURAL HISTORY

This case involves the sale of two sets of 9 1/4% senior notes: the 2008 bonds issued in 1998 by LES and the 2009 bonds issued in 1999 by Safety-Kleen. Plaintiffs allege that LES and Safety-Kleen, through manipulative accounting, made materially false statements during the Class Period regarding the financial status of the Company. These statements are alleged to have included gross overstatements of earnings, revenues, and net income. Plaintiffs further allege that, through these misrepresentations, LES and Safety-Kleen were able to maintain the Company's profitable and healthy appearance when in reality the Company lost more than 500 million dollars.

The bonds that are the focus of this case were originally issued to TD Securities, Inc., Nationsbanc Montgomery Securities, LLC, and Raymond James & Associates, Inc. (collectively the "Initial Purchasers"). The Initial Purchasers are defendants in the present action. These companies in turn sold the bonds to various Qualified Institutional Buyers ("QIBs") in private placements exempt from registration. Many of the QIBs also purchased bonds in the aftermarket. The bonds were eventually registered with the Securities and Exchange Commission ("SEC"). The registration documents and other SEC filings contained financial statements prepared by PriceWaterhouseCoopers ("PwC"), the Company's independent auditor and co-defendant in the present matter. After registration, the QIBs had the option of exchanging the unregistered bonds for registered ones that could be traded on the open market.[1]

On March 6, 2000 the Company announced that it had uncovered accounting irregularities and that PwC had withdrawn its financial reports for 1997, 1998, and 1999. The value of the bonds plummeted. In addition to the Initial Purchasers and PwC, the other defendants in the case are former directors (some of which are collectively known as the "Outside Directors") and officers of Safety-Kleen and LES.

The Amended Consolidated Class Action Complaint was filed on July 15, 2002. The plaintiffs claim that the defendants violated Sections 11(a), 12(a)(2) and 15 of the Securities Act of 1933, Sections 10(b), 20(a), and 18 of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated under the 1934 Act. On September 9, 2002 this court issued Order No. 50 dismissing the Section 11(a) claims against the Initial Purchasers.

## DISCUSSION

---

[1] It is undisputed that neither of the lead plaintiffs purchased *registered* 2009 bonds.

2

> Rule 23 of the Federal Rules of Civil Procedure permits class certification if:
>
> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition, given these elements are found, the court is only permitted to certify if it "finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b). The court will address each of these requirements in turn.

   1.   *Numerosity*

Although no specific number of claimants is required to satisfy the numerosity requirement, "mere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1)." 7A CHARLES A. WRIGHT, ARTHUR R. MILLER, AND MARY K. KANE, FEDERAL PRACTICE & PROCEDURE, § 1762 at 164 (2d ed. 1986). The plaintiffs state in their brief in support of the motion to certify that they do not know the exact number of potential class members but that they "believe there are hundreds of persons and entities." (Pls.' Mem. Supp. at 11.) The Outside Directors claim in their brief in opposition to the motion to certify that the number of potential class members is easily ascertainable. Although it is not completely clear from the brief, the total number of potential class members based on the Outside Directors' calculations appears to be as low as 63. (Outside Directors' Mem. Opp'n at 12-13.) In their reply brief, the plaintiffs state that the class will include at least 219 persons and entities based on the records of the pool of QIBs from which the lead plaintiffs were chosen. (Pls.' Reply Mem. at 8.)

3

This court finds that the most likely explanation for the discrepancy in the numbers put forth by the plaintiffs and Outside Directors is that each is using a different definition of "class member." The Outside Directors are focusing on the purchasing institutions, even if the institutions are purchasing on behalf of individual investors, and the plaintiffs are focusing on the number of beneficial holders, who may have had a financial institution purchase the bonds on their behalf. In deciding who should be counted as a plaintiff, this court finds that those that are alleged to have ultimately suffered the financial loss should be counted as class members. Thus, the beneficial holders should be counted as class members. In addition, if the institutions that purchased the bonds on behalf of individual investors purchased bonds on their own behalf, they too would be included in the pool of class members. Having defined the class in such a way, this court finds that the plaintiffs' figure of at least 219 is likely the more accurate estimate of the total number of class members. Based on this number, and the likelihood that the class members are dispersed throughout the country, this court finds that the numerosity requirement of Rule 23(a)(1) is satisfied.

2. *Similarity*[2]

There is no question that some class members took different paths than others in coming to own their shares. The QIBs purchased shares pursuant to private placements and on the aftermarket. Other class members may have only purchased registered bonds on the open market. The defendants claim that these differences make the lead plaintiffs ill-suited to prosecute the case on behalf of the class members. All the plaintiffs are bond holders who allegedly suffered a loss because of the

---

[2] This section addresses the elements of Fed. R. Civ. P. 23(a)(2)-(4). The Fourth Circuit has stated that the commonality, typicality, and adequate representation requirements of 23(a) "tend to merge, with commonality and typicality 'serving as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Broussard v. Meineike Discount Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998) (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

4

misrepresentations of contained in a small number of financial statements, memoranda, and filings. Based on this alone, the court finds sufficient commonality, typicality, and adequacy of representation.

While acknowledging the differences between the class members, this court believes it would not be appropriate to decline certification at this time based on these differences. For example, the question of whether the fraud on the market theory can be used to avoid having to prove individual reliance on a case-by-case basis has yet to be answered. Certainly, if this theory is available to the class, it will significantly increase the uniformity of their proof requirements. Furthermore, should the fraud on the market theory be unavailable, the reliance issue will still likely be tied to a small number of allegedly false or misleading statements and filings. Some class members may claim to have relied on private placement memoranda when purchasing their bonds while others may have relied on the integrity of the market. This court is of the opinion it is too early to tell whether these differences will require "a series of mini-trials," as some of the defendants have suggested, and believes that the class should be certified so that the litigation can continue and the factual and legal discrepancies can come into sharper focus.

Finally, as for the requirement of Rule 23(a)(4), the PwC and Outside Director defendants argue that the lead plaintiffs, none of which purchased *registered* 2009 bonds, cannot adequately represent the class members' Section 11 claims relating to the registered 2009 bonds. The plaintiffs respond by pointing out that a Section 18 claim contains all of the elements of a Section 11 claim and thus, in proving their own Section 18 claim, the lead plaintiffs will prove the Section 11 claims of all the class members. The court is satisfied that the lead plaintiffs' interest in prosecuting the Section 18 claims will ensure the adequacy of representation on the class members Section 11 claims relating to 2009 bonds.

*3.     Common Questions of Law or Fact Predominate*

This first requirement of Rule 23(b) is closely related to the requirements of Rule 23(a)(2)-(4). As stated above, the court acknowledges factual differences that may produce differing proof requirements for the various class members. At this stage in the litigation, however, it appears that these differences are outweighed by common characteristics. Thus, this court finds the requirement of Rule 23(b) is met.

*4.     Class Action is Superior to Other Available Methods*

The alternative to the class action format would be to require each plaintiff to individually retain an attorney and file suit against the various defendants. This, in turn, would require this court or other courts to maintain potentially hundreds of individual lawsuits with common defendants and many common factual and legal issues. Therefore, this court finds that refusing to certify a class would not serve the fairness and efficiency aims of Rule 23(b).

## CONCLUSION

This court recognizes that the proposed class is not homogenous. However, until the scope and magnitude of the problems created by these factual and legal differences become more clearly ascertainable, this court grants the motion to certify reserving the right to modify, bifurcate, or decertify the class in the future.

IT IS SO ORDERED.

Joseph F. Anderson, Jr.
United States District Judge

January 8, 2003
Columbia, South Carolina